**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**THE NEW YORK STATE COURT OFFICERS
ASSOCIATION, on its own behalf and on behalf of
its current and retired members and their dependents,**

                        **Plaintiffs,**

   vs.                                                **1:12-CV-532
                                                         (MAD/DEP)**

**PATRICIA A. HITE, in her official capacity as Acting
Commissioner, New York State Civil Service Department;
CAROLINE W. AHL and J. DENNIS HANRAHAN, in
their official capacities as Commissioners of the New York
State Civil Service Commission; ROBERT L. MEGNA,
in his official capacity as Director of the New York State
Division of the Budget; THOMAS P. DiNAPOLI, in his
official capacity as Comptroller of the State of New York;
and JONATHAN LIPPMAN, in his official capacity as
Chief Judge of the Unified Court System,**

                        **Defendants.**

_____

**APPEARANCES:**                            **OF COUNSEL:**

**SILLS CUMMIS & GROSS, PC**          **JAMES E. TYRRELL, JR., ESQ.**
One Riverfront Plaza
The Legal Center
Newark, New Jersey 07102
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**           **HELENA LYNCH, AAG**
**STATE ATTORNEY GENERAL**         **RICHARD LOMBARDO, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

                              **MEMORANDUM-DECISION AND ORDER**

# I. INTRODUCTION[1]

In a complaint dated January 19, 2012, Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and money damages, to redress Defendants' alleged deprivation of Plaintiffs' rights secured pursuant to the Contracts Clause of the United States Constitution, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, resulting from Defendants' unilateral action effective October 1, 2011, increasing the contribution rates that Plaintiffs, who are active and retired employees of the State of New York, pay for their health insurance in retirement. *See* Dkt. No. 1. Plaintiffs further seek an order declaring Chapter 491 of the Laws of 2011, amending Civil Service Law § 167(8), unconstitutional, as applied, and enjoining Defendants' implementation thereof, to the extent that the law and any regulations adopted thereunder impermissibly impair the obligation of the contract between the State and Plaintiffs by increasing the contribution rates that such retirees are required to pay for health insurance benefits in retirement. *See id.*

---

[1] The instant case is one of eleven related cases currently before this Court, all brought against, for the most part, the same individual Defendants and are all related to the increase in contribution rates for retirees' health insurance. *See Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.); *NYSCOBA, Inc. v. New York*, No. 1:11-cv-1523 (N.D.N.Y.); *N.Y.S. Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v. New York*, No. 1:11-cv-1525 (N.D.N.Y.); *Police Benevolent Assoc. of the N.Y.S. Troopers, Inc. v. New York*, No. 1:11-cv-1526 (N.D.N.Y.); *N.Y.S. Police Investigators Assoc., Local 4 IUPA, AFL-CIO v. New York*, No. 1:11-cv-1527 (N.D.N.Y.); *Police Benevolent Assoc. of N.Y.S., Inc. v. New York*, No. 1:11-cv-1528 (N.D.N.Y.); *Krey v. Cuomo*, No. 1:11-cv-1529 (N.D.N.Y.); *Spence v. New York*, No. 1:11-cv-1533 (N.D.N.Y.); *Roberts v. New York*, No. 1:12-cv-46 (N.D.N.Y.); *N.Y. Court Officers Assoc. v. Hite*, No. 1:12-cv-532 (N.D.N.Y.); *Brown v. New York*, No. 1:13-cv-645 (N.D.N.Y.). With minor variations, the related cases all assert the same causes of action and raise the same arguments in the pending motions for summary judgment. The Court has determined that *Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.) shall serve as the "Lead Case." Familiarity with the Lead Case is presumed. The Court adopts and incorporates by reference the related Memorandum-Decision and Order in the Lead Case into this Memorandum-Decision and Order and will only address those facts and legal issues that are distinct from the Lead Case.

Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 88.

## II. BACKGROUND

**A.     The Parties**

Plaintiff, the New York State Court Officers Association ("NYSCOA") is the collective bargaining representative for non-judicial Unified Court System ("USC") employees within the City of New York. *See* Dkt. No. 88-2 at ¶ 1. Defendant Patricia A. Hite was, in 2011, Acting Commissioner of the New York State Department of Civil Service. *See id.* at ¶ 2.[2] Defendants Caroline W. Ahl and J. Dennis Hanrahan were, in 2011, the members of the Civil Service Commission. *See id.* at ¶ 3. Defendant Robert Megna was, in 2011, the Director of the New York State Division of the Budget. *See id.* at ¶ 4. Defendant Thomas P. DiNapoli is the Comptroller of the State of New York. *See id.* at ¶ 5.

**B.     Collective Bargaining Agreement in Effect in 2011 Between New York and Plaintiffs**

During 2011, the collective bargaining agreement ("CBA") in effect between the State of New York and NYSCOA was the CBA entered into July 24, 2008, for the term April 1, 2007, to March 31, 2011 (the "2007-11 CBA"). *See* Dkt. No. 88-2 at ¶ 8. Section 8.1 of the 2007-11 CBA states that "[t]he State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service. Employees enrolled in such plans shall receive health and prescription drug benefits to the same extent, at the same contribution level, in same form and with the same co-payment structure that applies to the majority of represented Executive Branch

---

[2] The Court notes that Plaintiffs object to the assertion that Defendant Hite was Acting Commissioner of the New York State Department of Civil Service. *See* Dkt. No. 96-22 at ¶ 10. The same objection was raised and addressed by the Court in the Lead Case and will not be repeated in the present matter.

3

employees." *Id.* at ¶ 9. Language identical or substantively identical to that in Section 8.1 of the 2007-11 CBA appears in all CBAs between the State and NYSCOA since at least 1991. *See id.* at ¶ 10. Article 33 of the 2007-11 CBA provides that "[t]his Agreement is the entire Agreement between the State and the Union, terminates all prior agreements and understandings and concludes all collective negotiations during its term." *Id.* at ¶ 11; *but see* Dkt. No. 97 at ¶ 11.

**C.     CBAs Between the State and CSEA and the State and PEF in 2011**

On June 22, 2011, the Governor issued a press release announcing that the State had reached a five-year labor agreement with the Civil Service Employees Association ("CSEA"). *See* Dkt. No. 88-2 at ¶ 12. The press release announced a two percent increase in the premium contribution rate for Grade 9 employees and below, and a six percent increase for Grade 10 and above. *See id.*

The 2011-16 CBA between CSEA and the State was signed on August 15, 2011, and covered the periods between April 2, 2011 and April 1, 2016. *See id.* at ¶ 13. Section 9.14 of the 2011-16 CSEA CBA provides as follows:

> The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance abuse components provided under the Empire Plan. Effective October 1, 2011 for employees in a title Salary Grade 9 or below, the State agrees to pay 88 percent of the cost of individual coverage and 73 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance components provided under the Empire Plan. Effective October 1, 2011 for employees in a title Salary Grade 10 and above or an employee equated to a position title Salary Grade 10 and above the State agrees to pay 84 percent of the cost of individual coverage and 69 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance abuse components provided under the Empire Plan.

*Id.* at ¶ 14.

4

On November 3, 2011, PEF announced that its members ratified a four-year agreement with the State. *See id.* at ¶ 15. The term of that agreement was April 2, 2011 through April 1, 2015. *See id.*

Section 9.2(h) of the 2011-15 PEF CBA states as follows:

> The State agrees to pay 90 percent of the cost of the individual coverage and 75 percent of the cost of dependent coverage, including prescription drug coverage, provided under the Empire Plan. Effective October 1, 2011 for employees in a title Salary Grade 9 or below (or an employee equated to a position title Salary Grade 9 or below), the State agrees to pay 88 percent of the cost of individual coverage and 73 percent of the cost of dependent coverage. Effective October 1, 2011 for employees in a title Salary Grade 10 and above (or an employee equated to a position title Salary Grade 10 and above) the State agrees to pay 84 percent of the cost of individual coverage and 69 percent of the cost of dependent coverage.

*Id.* at ¶ 16.

The members of the CSEA and PEF constitute the majority of represented executive branch employees. *See id.* at ¶ 17.

**D.      Legislation, Administrative Measures, and Fiscal Crisis**

The Court will not repeat all of the facts relating to the 1983 and 2011 Legislation, the fiscal crisis facing the State in 2010 and 2011, or the parties' arguments relating to Defendant Hite acting as the head of the Department of Civil Service. Rather, the Court refers the parties to the discussion set forth in the accompanying Memorandum-Decision and Order from the Lead Case.

**F.      The Complaint and Defendants' Motion for Summary Judgment**

In their first cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees violated the Contracts Clause of Article I, § 10 of the United States Constitution. Defendants contend that the Court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right

5

to a perpetually fixed health insurance premium contribution rates. Further, Defendants argue that, even if Plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they failed to demonstrate a substantial impairment of that right. Moreover, Defendants contend that they are entitled to summary judgment on this claim because the law at issue served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

The second cause of action allege that the retirees' premium contribution increase violated Plaintiffs' right to due process under the Fourteenth Amendment to the United States Constitution. Defendants argue that they are entitled to summary judgment because Plaintiffs do not have a constitutionally protected property right in perpetually fixed premium contribution rates. Additionally, Defendants contend that, even if Plaintiffs had a property interest, the claim still fails because they had an adequate state-court remedy of which they failed to avail themselves.

Finally, the third cause of action seeks a declaratory judgment that Civil Service Law § 167(8) is unconstitutional as applied to them. Defendants contend that this claim is subject to dismissal because it is entirely duplicative of other, fatally defective claims.

### III. DISCUSSION

**A.      Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Plaintiffs' Claims**

The Court will not restate here all of the relevant law or reasons why Defendants' motion for summary judgment is granted as to Plaintiffs' ten named causes of action. Rather, the Court directs the parties to the discussion in the Lead Case, which addresses each of the raised arguments. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102. The Court will only briefly address arguments raised by Plaintiffs that are distinct from those addressed in the Lead Case.

Initially, Plaintiffs argue that the Court should exclude the declarations of Dominic Colafati and Darryl Decker due to Defendants' failure to disclose them as witnesses. *See* Dkt. No. 99 at 24-25. As discussed in detail in the Lead Case, Defendants' failure to disclose these witnesses did not result in any prejudice and Plaintiffs have failed to demonstrate that the Court should grant such extraordinary relief.

As discussed in detail in the Lead Case, ordinary principles of contract interpretation require the Court to conclude that none of the CBAs at issue guaranteed a perpetually fixed premium contribution rate into retirement. *See M & G Polymers USA, LLC v. Hobert Freel Tackett*, ___U.S.___, 135 S. Ct. 926, 937 (2015) (holding that, while a CBA may explicitly provide that certain terms continue after the agreement's expiration, when a contract fails to address the duration of retiree benefits, "a court may not infer that the parties intended those benefits to vest for life"). While the CBAs at issue all provide that retirees have the right to continue receiving health insurance through the NYSHIP, they are all silent as to the premium contribution rate to be paid by retirees. *See Serafino v. City of Hamtramck*, 707 Fed. Appx. 345, 352-53 (6th Cir. 2017) ("Looking to the four corners of the agreements, there is no indication that the City intended to provide *any* healthcare benefit to retirees for life, let alone a right to deductible-free, low-co-pay, forever-unalterable healthcare insurance") (emphasis in original). This conclusion is further supported by the legislation passed in 1983 providing that the State would continue to pay the full premium for pre-January 1, 1983 retirees. If retirees had a contractually vested perpetual right to the same contribution rates in effect at the time of their retirement, there would have been no need for an affirmative legislative carve-out specifically applicable to them. Finally, as set forth in the Lead Case, the undisputed facts establish that, even if Plaintiffs had a vested right to a perpetual fixed contribution rate, the small increase to the contribution rate was not a substantial impairment and the increase was reasonable and necessary in furtherance of an important government interest. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 26-32.

Interestingly, Plaintiffs contend that Defendants are not entitled to summary judgment as to the breach of contract claim. *See* Dkt. No. 99 at 25-26. The complaint, however, contains no

8

breach of contract claim. *See* Dkt. No. 1. Even assuming that the complaint contains a breach of contract cause of action, it would also be subject to dismissal. Plaintiffs point to no contractual provision that was breached. The provisions regarding health insurance premiums do not extend beyond the life of the CBA and do not create a vested right to perpetually fixed premium contributions. *See Gallo*, 813 F.3d at 268.

As to Plaintiffs' due process claims, the undisputed facts demonstrate that neither the CBAs nor Civil Service Law § 167 created a property interest in fixed premium contribution rates in retirement. *See Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987); *Pineman v. Fallon*, 662 F. Supp. 1311, 1318 (D. Conn. 1987) ("[G]enerally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future"). Nothing prevented New York from amending Section 167(8) and extending the premium shifts negotiated in 2011 to unrepresented employees and retirees. Further, Plaintiffs failed to address Defendants' argument that the due process cause of action is subject to dismissal because of the availability of a post-deprivation Article 78 proceeding. *See Campo v. N.Y.C. Emps. Ret. Sys.*, 843 F.2d 96, 102 (2d Cir. 1988); *Minima v. N.Y.C. Emps. Ret. Sys.*, No. 11-cv-2191, 2012 WL 4049822, *6 (E.D.N.Y. Aug. 17, 2012). Finally, contrary to Plaintiffs' argument, retiree premium contributions are not a form of deferred compensation. *See M&G Polymers USA LLC*, 135 S. Ct. at 936 ("Retiree benefits are not a form of deferred compensation").

Based on the foregoing, Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion for summary judgment (Dkt. No. 88) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall attach a copy of the decision in the Lead Case (*Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102) to this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated: September 24, 2018
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge